ENTERPRISE SHIP CO., Plaintiff,

v.

NORFOLK S. RY. CO.,
et al., Defendants.

No. 2:00CV459.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 7, 2001.

Carl David Gray, Hunton & Williams, Norfolk, VA, John Early Holloway, Hunton & Williams, Norfolk, VA, for plaintiffs.

Daniel Reid Warman, Baker and Warman, Norfolk, VA, Mark T. Coberly, Vandeventer Black LLP, Norfolk, VA, *for defendants.*

## MEMORANDUM OPINION & ORDER

JACKSON, District Judge.

This admiralty matter comes before the Court on Warren Merritt's motion for summary judgment against Enterprise Ship Company ("Enterprise") and on Enterprise's motion for partial summary judgment against Norfolk Southern Railway Company ("NSRC"). Having considered the parties' oral argument and for the reasons below, the Court **GRANTS** Merritt's motion for summary judgment with respect to Enterprise's claim for negligence but **DENIES** Merritt's motion for summary judgment with respect to Enterprise's claims for gross negligence and willful misconduct. In addition, the Court **DENIES** Enterprise's *motion for partial* summary judgment. This written opinion supplements and supercedes the Court's ruling from the bench on May 21, 2001.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 1999, the Energy Enterprise, a vessel owned by Enterprise, struck the coal loader on Norfolk Southern Pier 6, owned by Norfolk Southern Railway Company ("NSRC"), causing both damage to the Enterprise as well as to the coal loader.

Enterprise brought the instant action against "NSRC," alleging, among other claims, negligence. In turn, NSRC has counterclaimed for the damages to its coal loader, alleging that the ship's master and the docking pilot, Warren Merritt ("Merritt"), whose conduct is imputed to Enterprise, were negligent. Moreover, NSRC

alleged that the Enterprise used defective equipment.

In response to NSRC's counterclaim, Enterprise filed third-party complaints against Merritt and against the Moran Towing Corporation ("Moran"). Enterprise sues Merritt on the basis of "negligence, gross negligence, or willful misconduct" and Moran on the basis of negligence. *See* Enterprise Ship Co.'s Third–Party Compl., ¶ 18; Enterprise Ship Co.'s Am. Third–Party Comp., ¶ 20. Both Merritt and Moran have counterclaimed against Enterprise on the basis of the pilot slip contract signed by the Enterprise's master.

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the Court must view the facts and inferences to be drawn from the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

## III. DISCUSSION

### A. Merritt's Motion for Summary Judgment

#### 1. The contract's exculpatory clause

Merritt argues that Enterprise cannot personally hold him liable under the terms of the pilotage clause Captain Costabile executed. The exculpatory provisions on the back of the slip provide:

> PILOT NOT TO BE HELD PERSON-ALLY LIABLE
>
> 1. The services of the pilot while participating in directing the navigation of a vessel from on board such vessel or from elsewhere are accepted on the understanding that *neither the owners nor the operators of a vessel* making use of or having available her own propelling power *will assert any personal liability to respond in damages, including any rights over against the pilot for any damages sustained or caused by the vessel, even though resulting from the pilot's negligence, in respect to the giving of orders to any of the tugs furnished to or engaged in the assisting services and/or in respect to the handling of such vessel; excepting, however, the personal liability of rights over against the pilot for his willful misconduct or gross negligence.*

Br. Warren Merritt Supp. Mot. Summ. J., Tab 1, Ex. A., at M 106 (emphasis added). This clause bars the vessel owner or oper-ator from asserting claims of personal liability against the pilot, "even though resulting from the pilot's negligence." *Id.* However, beyond ordinary negligence, Enterprise's third-party complaint alleges that Merritt's conduct was grossly negligent or willful. *See* Enterprise Ship Co.'s Third–Party Compl., ¶ 18; Enterprise Ship Co.'s Am. Third–Party Compl., ¶ 20; *see also* Enterprise Ship Co.'s Answers Moran Towing Corp.'s Interrogs., at 2–3 (describing Enterprise's factual basis for alleging gross negligence or willful miscon-duct). Because the scope of the exculpato-ry clause does not shield Merritt from gross negligence or willful misconduct, Merritt's arguments that ultimately rely on the exculpatory clause may only sup-port his motion for summary judgment as to negligence.[1] Therefore, whether Enter-prise can state a claim for *negligence* is a question of the pilotage clause's contractu-al validity.

In *Sun Oil Co. v. Dalzell Towing Co.,* the Supreme Court upheld a similar excul-patory pilotage clause in favor of a tug captain aboard another's vessel. *See* 287 U.S. 291, 294, 53 S.Ct. 135, 77 L.Ed. 311 (1932). The Court reasoned that, in the absence of an "exclusive privilege or mo-nopoly in respect of the services . . . de-sired," such clauses are enforceable. *See id.* at 294, 53 S.Ct. 135.

█ Counsel for enterprise suggests that the Supreme Court's subsequent de-cision in *Bisso v. Inland Waterways Corp.,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), limits pilotage exculpatory clauses. However, the *Bisso* court unmis-

---

**1.** Merritt's motion for summary judgment en-tirely failed to address Enterprise's allega-tions that he acted with gross negligence or willful misconduct. Curiously, Enterprise's opposition to the motion for summary judg-ment is silent on Merritt's oversight. At oral argument on these motions, counsel for Mer-ritt represented that he did not seek summary judgment as to Enterprise's claims of gross negligence and willful misconduct, only as to Merritt's ordinary negligence. Merritt's brief fails to make this intent clear. *See, e.g.,* Br. Warren Merritt Supp. Mot. Summ. J., at 13 ("[T]he Third–Party Complaint must be dis-missed in its entirety").

takably stated that its holding was limited to *towing* exculpatory clauses and not an individual pilot's exculpatory clause. *See id.* at 93, 75 S.Ct. 629 ("There are distinctions between a pilotage and a towage exemption clause which make it entirely reasonable to hold one valid and the other invalid"). In fact, *Bisso* expressly distinguished the rule of *Sun Oil. See id.,* at 92–93, 75 S.Ct. 629. Thus, *Bisso* did not invalidate exculpatory clauses for pilots.

Alternatively, Enterprise argues that, even assuming pilotage clauses are generally enforceable, this exculpatory clause is unenforceable as a product of monopoly bargaining power. In its analysis of the pilotage clause's validity, the *Sun Oil* court considered whether the pilot had an "exclusive privilege or monopoly in respect of the services that *Sun Oil* desired to have performed for its tanker" and whether *Sun Oil* was under compulsion to accept the terms of the pilotage clause. *Sun Oil Co.,* 287 U.S. at 294, 53 S.Ct. 135.

Enterprise has submitted a sealed brief to the Court in support of its opposition to summary judgment. Essentially, Enterprise argues that there are genuine issues of material fact regarding whether Merritt has a monopoly and that therefore the Court cannot grant summary judgment on a contract allegedly resulting from such a monopoly. In support of its position, Enterprise characterizes Pier 6 as a "locked terminal," meaning a single tug boat company has a monopoly over the provision of docking pilot services. NSRC requires all vessels docking at Pier 6 to use docking pilot services and does not permit ships to choose their own docking pilots. Instead, Moran Towing, which has an exclusive contract (except when surcharged with work), arranges its docking pilots with the Association of Virginia Docking Pilots. Merritt is a pilot with this association. Another towing company, McAllister Towing, and its docking pilots have a similar exclusive right to dock ships at Dominion Terminal and Kinder Morgan Bulk Terminals (Pier 9), the only other coal loading terminals in the Port of Hampton Roads.

Even accepting all of Enterprise's facts as undisputedly true, these facts are not material. In *Kane v. Hawaiian Independent Refinery, Inc.,* the Court of Appeals for the Ninth Circuit ("Ninth Circuit") examined a pilotage exculpatory contract of adhesion to determine if the degree of compulsion required the court to invalidate it. *See* 690 F.2d 722, 724 (9th Cir.1982). The Ninth Circuit found that the use of defendant's mooring masters (a type of pilot) was not required by law, but was "merely a condition to doing business" with the defendant. In that case, the court noted that exculpatory pilotage clauses are an industry custom and that all parties were familiar with the custom of the industry. In addition, the Ninth Circuit noted that pilots have a legitimate interest in limiting liability for damage caused by a large vessel moving under its own power.

In this case, Enterprise must create a genuine issue as to material facts in order to survive summary judgment. However, even assuming, *arguendo,* that Enterprise's factual assertions are correct, they do not establish compulsion. First, here, as in *Kane,* neither party claims that there is a public law obligation to use a private docking pilot. Instead, the requirement is uniquely a private, business contractual provision and, apparently, a condition of doing business. *See, e.g., Kane,* 690 F.2d at 724 (degree of compulsion did not justify invalidating pilotage clause where use of a firm's mooring masters was not required by law but was merely a condition to doing business). Second, Enterprise has not created a genuine issue that pilotage exculpatory clauses are anything other than an

industry custom in Hampton Roads. Third, Enterprise has not created a genuine issue regarding Merritt's *legitimate* interest in the exculpatory clause by coming forward with any evidence suggesting otherwise. Instead, Enterprise simply makes conclusory claims while citing deposition transcripts that do not support its conclusions. Fourth, Enterprise has attempted to conflate Merritt and Moran Towing when alleging compulsion. It is obviously absurd to claim that a single individual, Merritt, somehow compelled Enterprise Shipping Company to sign a contract due to monopoly power. Therefore, Enterprise attempts to claim Merritt is an employee if Moran Towing and that therefore they are one in the same. But Enterprise's own deposition transcripts, attached to establish a genuine issue as to monopoly power, clearly establish that Merritt is a member of the Association of Virginia Docking Pilots, an association organized solely for collecting fees and distributing them to pilots, and that Merritt does *not* have any contract with NSRC at all. Rather, the exclusive contract is with Moran Towing. Enterprise produced no evidence that it was compelled to use Merritt's services rather than the services of another pilot from the Association of Virginia Docking Pilots. The Court, therefore, finds that the contractual exculpation clause is valid, was not compelled by monopoly power, and is enforceable. Accordingly, the Court **GRANTS** Merritt's motion for summary judgment with respect to ordinary negligence, but **DENIES** the motion with respect to gross negligence and willful misconduct.

### 2. The contract's borrowed servant clause

The pilot slip provides that Merritt is Enterprise's borrowed servant. The slip states, in relevant part, that "it is agreed that [Merritt] becomes *the borrowed serv-ant* of [the Energy Enterprise] and her owner or operator *for all purposes and in every respect,* his services while so engaged being the work of [the Energy Enterprise], her owner and operator and being subject to the exclusive supervision and control of the vessel's personnel..."

By virtue of Merritt's status as a borrowed servant, Merritt claims an entitlement to Enterprise's protection and indemnity ("P & I") insurance. As previously discussed, the Court has concluded that Enterprise may not hold Merritt accountable for ordinary negligence because of the pilotage clause. Other parties, however, may seek to hold Merritt jointly accountable with Enterprise. Doubtlessly, Merritt desires Enterprise's P & I insurance to shield him from this liability.

However, the borrowed servant clause and exculpatory clause do not necessarily create an indemnity right for Merritt against Enterprise. A party must clearly express its intent to indemnify another. *See Dominion Terminal Assoc. v. M/V Cape Daisy,* 24 F.Supp.2d 532, 537 (E.D.Va.1998) (citing *Dow Chem. Co. v. Tug THOMAS ALLEN,* 349 F.Supp. 1354, 1364–65 (E.D.La.1972)) (Doumar, J.). In this case, Merritt has presented no evidence establishing the terms of the insurance contract. Thus, the Court lacks adequate information to resolve this issue at this time. Accordingly, the Court reserves judgment as to whether the borrowed servant clause created an indemnity right against Enterprise.

### B. Enterprise's Motion for Partial Summary Judgment

#### 1. Plaintiff's claim that the coal loader was a *per se* obstruction because the United States allegedly did not permit it

Enterprise seeks a legal conclusion from the Court that the coal loader was a *per se*

illegal obstruction of navigable waters because the United States allegedly did not permit it. The Rivers and Harbors Act of 1899 provides, in relevant part, that "[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited ... it shall not be lawful to build ... other structures ... except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army..." 33 U.S.C. § 403 (1994). Enterprise claims that Congress did not authorize the coal loader as required by statute. In support of this position, Enterprise notes that NSRC's permit to build the pier is silent as to any permission to build a coal loader. The permit provides that NSRC may "dredge, and construct a steel sheet-pile bulkhead, riprapped earth dike, fill, and a coal pier to extend 200 feet channelward of the established pierhead line." On the basis of the statute and the permit, Enterprise claims that Congress did not affirmatively authorize NSRC's coal loader.

However, Title 33 of the Code of Federal Regulations, section 330 .3(b), permits, without express authorization, structures completed before certain cut off dates. Subsection (b) allows structures completed before December 18, 1968, without additional authorization "provided ... there is no interference with navigation." In addition, subsection (b) provides that activities completed shoreward of applicable Federal Harbor lines before May 27, 1970, do not require specific authorization.

■ Enterprise cannot prevail in its partial summary judgment motion on this issue because there are genuine issues as to material facts. In particular, Enterprise has not met its burden to come forward with facts sufficient to support its assertion that the coal loader is illegal. Instead, Enterprise has asserted a legal conclusion ("the coal loader is unauthorized") solely on the basis of the statute and the permit. To show illegality, Enterprise had to show that the coal loader was not specifically permitted by the pier building permit *and* that the NSRC did not build the coal loader before 33 C.F.R. § 330.3(b)'s cut off date. A party moving for summary judgment must allege facts that, if uncontroverted, would permit judgment as a matter of law. Here, Enterprise has presented literally no evidence that NSRC built the coal loader after the § 330.3(b) cut off date; Enterprise has only demonstrated that the coal loader was not specifically mentioned in the permit. Accordingly, the Court **DENIES** Enterprise's motion for partial summary judgment on this ground.

2. **Plaintiff's claim that the coal loader was an obstruction, even if the United States permitted it, because NSRC used the loader in an obstructive manner**

Even if Congress permitted the construction of the coal loader, Enterprise argues that the coal loader may *still* have been an obstruction of navigable waters if used in an obstructive manner. Enterprise places principal reliance for this proposition on *F.S. Royster Guano Co. v. Outten,* 266 F. 484 (4th Cir.1920). In *Outten,* the Court of Appeals for the Fourth Circuit ("Fourth Circuit") found that a non-permitted, movable crane, when not in use, which extended 38 feet over navigable water, constituted an illegal obstruction. *See id.* at 487. Although the *Outten* court held that the crane was an obstruction not authorized by law (and thus a *per se* illegal obstruction), the court stated that in the alternative "[e]ven if this obstruction had been authorized by the proper authorities, it would have been just as much an obstruction to navigation as would have been

a drawbridge left in an improper position..." *Id.* The *Outten* court chose the example of drawbridges to illustrate how a properly authorized structure might still create an illegal obstruction to navigable waters because of the manner.in which the particular structure was used. Thus, under the Fourth Circuit's precedent, depending on the particular facts of a case, it is possible for congressionally authorized structures to obstruct navigable waters.

■ In this fact specific inquiry, the Court finds that there are genuine issues as to material facts and that summary judgment is not appropriate. Accordingly, the Court **DENIES** Enterprise's motion for partial summary judgment. Having found summary judgment inappropriate, the Court is unable to address Enterprise's contention that the "Pennsylvania" burden-shifting rule applies.

## IV.  CONCLUSION

The Court **GRANTS** Merritt's motion for summary judgment as to Enterprise's claim for negligence, but **DENIES** it with respect to Enterprise's claims for gross negligence and willful misconduct. In addition, the Court **DENIES** Enterprise's motion for partial summary judgment.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**